BUTTRICK *v.* NASHUA & LOWELL RAILROAD.

A transfer of stock in a dividend paying corporation not recorded in the record book of transfers is invalid against attaching creditors without notice.

A corporation attaching the stock is not chargeable with the knowledge of such transfer possessed by one of its directors who takes no part in causing and is not informed of the attachment.

BILL IN EQUITY, to compel the defendants to issue to the plaintiff a certificate for fifty shares of its capital stock.  October 19, 1876, one Wood, owning ninety-three shares of the defendants' capital stock, assigned fifty of them to the Appleton National Bank, of Lowell, as collateral security for his note to the bank for $4,200, and the defendants issued to the bank a certificate (Wood's certificate being surrendered) for that number of shares, stating therein that they were held by the bank as collateral. The remaining forty-three shares were at the same time pledged to the Maverick Bank, of Boston.  At the defendants' annual meeting in May, 1877, Dr. Graves (who was at that time chosen a director) and the plaintiff negotiated with Wood for the purchase of his shares.  Wood finally agreed to sell the fifty shares to the plaintiff and the forty-three shares to Graves at a certain price per share in addition to the sum for which each lot of shares was held by the banks, and they severally agreed to take them at that price and to pay the sums for which the respective lots were held as collateral.  The agreement was verbal, and nothing was then paid to Wood.  June 19, 1877, Wood, in pursuance of the agreement, executed and delivered to the plaintiff an irrevocable power of attorney, authorizing the Appleton Bank to transfer the fifty shares to the plaintiff, who then paid Wood a part, and shortly afterwards the remainder, of the agreed price.  In March, 1878, the plaintiff paid Wood's $4,200 note to the bank, received from it a transfer of the shares, and soon after called upon the defendants for a new certificate, which was refused.

July 11, 1877, the defendants brought suit against Wood, caused the fifty shares to be attached, subsequently obtained judgment and execution, and were proceeding to levy on the shares

when this bill was filed. Wood was the defendants', treasurer until the annual meeting in May, 1877, and its acting treasurer until June 6, 1877. Graves, one of the defendants' directors, was fully informed of the transactions between Wood and the plaintiff at the time they were had. His knowledge did not come to him officially, or in the course of the discharge of his duty as director, but through his contemporaneous bargain for and purchase of the forty-three shares. No other officer of the defendants had any knowledge of the plaintiff's claim to the stock or of its sale to him until after the attachment.

The defendants' stock is by their by-laws " transferable by an assignment thereof on the books of the corporation, either personally or by power of attorney," and all transfers or assignments of stock are required to be made in a book kept for the purpose.

*Sawyer & Sawyer, Jr.*, for the plaintiff. The defendants took nothing by their attachment. There is not in respect to stock in corporations, as there is in respect to deeds and mortgages, any statute declaring that a transfer not entered on the books of the corporation shall be invalid except as against the vendor and his heirs. The only ground upon which an unrecorded transfer of shares is held invalid against an attaching creditor not chargeable with notice is that of presumed fraud, because there is no such change of possession as the subject admits of. *Pinkerton* v. *Railroad*, 42 N. H. 424. Hence it was laid down in that case that the absence of such transfer might be explained, and so the presumption of fraud be rebutted. And it was held that where the transfer was made at a distance from the office, and the old certificate surrendered, and new ones given by a transfer agent residing in a neighboring state, proof that the proper evidence of such transfer was sent to the keeper of the stock record to be entered, by the earliest mail communication, although not received until an attachment had intervened, would be a sufficient explanation, and the transfer be good against the creditor. The doctrine is, that if the purchaser is in no fault, a creditor cannot take what has been sold by an attachment of the debtor's interest. Now, Buttrick was in no fault. He bought nothing but an equitable interest. The legal title was in the Appleton Bank, which was entitled to hold it until its note became due, and until the note became due Buttrick had no power to effect a transfer upon the books. His title cannot be deemed fraudulent against an attaching creditor because of his not doing what he had no power to do. *Pinkerton* v. *Railroad*, 42 N. H. 424; *Beckwith* v. *Burrough*, 14 R. I. 366.

The defendants are chargeable with notice. It was an attempted attachment by itself, of shares of its own treasurer, in its own corporation, after he had parted with all his interest in them, and when at the time of the attachment both himself and one of the directors had full knowledge and memory of the fact. The treas-

urer is the officer designated by statute to keep the record of the names and places of residence of all the stockholders, and the number of shares owned by each; to give certificate and record a transfer of shares; and to give a sheriff, coming with a writ of attachment or with an execution, a certificate of the debtor's shares or the amount of his interest therein, with the numbers of shares or other description by which they are distinguished. G. L., c. 148, ss. 9, 10, 11, 12, 14; c. 237, s. 19. It is immaterial that he was in office only by holding over. He was in the office discharging all its duties, and held out to the world as such, and the treasurer of the corporation to all intents and purposes, so far as concerns Mr. Buttrick or any other third person. Sto. Ag. (9th ed.) 127; Dill. Mun. Cor. (ed. of 1881) s. 893, n. 1; Ang. & A. Corp. 287. It is immaterial when or how the knowledge which was in the mind and memory at the time of the attachment was obtained. Dresser v. Norwood, 17 C. B. N. S. 466—S. C., 14 C. B. N. S. 574; Hart v. Bank, 33 Vt. 252; Blumenthal v. Brainerd, 38 Vt. 410; Hayward v. Ins. Co., 52 Mo. 181; Scripture v. Company, 50 N. H. 571; Baldwin v. Casella, L. R. 7 Ex. 325; Hovey v. Blanchard, 13 N. H. 145, 149; Harriman v. Ins. Co., 49 Wis. 75; Bank v. Milford, 36 Conn. 93; 1 Pott. Corp. 264, 265; Willard v. Buckingham, 36 Conn. 395; Railroad v. Schuyler, 34 N. Y. 30; Pollock v. Bank, 7 N. Y. 274.

C. R. Morrison, on the same side. Upon the hypothesis that Wood sustained the same relation to the corporation up to the 6th of June as up to the 30th of May, it follows that the corporation had knowledge of everything which Wood knew. It must be taken for granted that the principal knows whatever the agent knows. Fitzherbert v. Mather, 1 T. R. 15; Dresser v. Norwood, 17 C. B. N. S. 481; Chouteau v. Allen, 70 Mo. 294, 341; Barnes v. Company, 45 N. H. 21. The corporation had knowledge of the whole transaction from the 30th of May to the 6th of June. If the transaction of the 19th of June was in any way essential to the completeness of the plaintiff's title, the corporation, knowing what it did know, was put upon inquiry, which, if followed up, must have brought full knowledge of what was done on the 19th of June. In addition to knowledge acquired through Wood, one of the directors, at least, is shown to have known all about the sale.

The true view, however, is, that the transaction on the 19th of June was unessential, for the sale of Wood's interest was complete without it. The case is indeterminate as to whether the agreement on the 30th of May was before or after the election of treasurer; but the transaction on the 30th of May, whether before or after the election of treasurer, was a binding agreement of sale. Without an actual payment on that day, there was a binding contract of sale from which neither party could recede; and the corporation, having knowledge of that contract, could not afterwards

defeat it by an attachment. All that was left to Wood was a right to redeem, a mere intangible right, incapable of delivery, or of transfer upon the books of the corporation.. Such being the nature of his interest, the understanding between the parties, that thenceforward his interest should belong to Buttrick, and Buttrick should pay as agreed, was all that was necessary. *Jordan* v. *Gillen*, 44 N. H. 424, 427; *Thompson* v. *Emery*, 27 N. H. 269, 272; *Brewer* v. *Franklin Mills*, 42 N. H. 294; *Harris* v. *Stevens*, 7 N. H. 454.

Buttrick being in no fault, in not effecting a transfer upon the books before the attachment, an attaching creditor could take nothing, for Wood had nothing. The want of a transfer is sufficiently explained by the fact, that, until the note to the bank became due, Buttrick had no power to effect a transfer upon the books, and so there is no presumption of fraud. This, upon the doctrine of *Pinkerton* v. *Railroad*, 42 N. H. 424, *Beckwith* v. *Burrough*,. 14 R. I. 366, and *Colt* v. *Ives*, 31 Conn. 25, would give him a good title, even if the corporation were not chargeable with notice.

If, upon a sale of one's interest in tangible personal property in possession of a third person, notice is given to him of the sale, and he agrees to hold for the purchaser, the sale is valid, both as between the parties and as against creditors, without any change of possession other than this. Bro. St. Fr., *s.* 319, *a;* *Morse* v. *Powers*, 17 N. H. 286, 294; *Lane* v. *Sleeper*, 18 N. H. 209, 214; *Kendall* v. *Fitts*, 22 N. H. 1; *Barney* v. *Brown*, 2 Vt. 374; *Spaulding* v. *Austin*, 2 Vt. 555; *Whitney* v. *Lynde*, 16 Vt. 579; *Rice* v. *Courtis*, 32 Vt. 460; *Flanagan* v. *Wood*, 33 Vt. 337; *Lynde* v. *Melvin*, 11 Vt. 683; *Wooley* v. *Edson*, 35 Vt. 221.

Unless a greater burden is imposed upon the purchaser of one's interest in stock that has been pledged than is laid upon a purchaser of a like interest in tangible property, it is apparent that Buttrick obtained a good title as early as June 19, 1877. He is brought within every authority upon the subject of a sale of one's interest in chattels that have been pledged. There was notice of the sale and of the agreement to pay Wood's note at its maturity, and an assent to this arrangement by the pledgee evidenced in the most decisive way by its taking an irrevocable power of attorney to transfer the stock to him upon his paying the debt for which it was pledged at its maturity.

The rule laid down in *Pinkerton* v. *Railroad* is this, as stated in the head notes and elaborated in the opinion: " On the transfer of stock, the delivery will not be complete until an entry of such transfer is made upon the stock record, or it be sent to the office for that purpose; and the omission thus to perfect the delivery will be *prima facie*, and, if unexplained, conclusive evidence of a secret trust, and, therefore, as matter of law, fraudulent and void as to creditors."

This proposition necessarily implies that the omission to make

a transfer may be explained, and, if satisfactorily explained, the sale is good. *Colt* v. *Ives*, 31 Conn. 26. It is a sufficient explanation that the sale was not of stock, but of a right to redeem pledged stock; and there is no provision in the statutes of the state, or charter, or by-laws of the company for the transfer of any such right upon the books of the corporation. A provision of a charter, that no transfer of stock shall be valid until such transfer shall be registered in a book to be kept for that purpose by the corporation, will be held to relate to the transfer of the legal title, and not of the equitable interest, in stock that has been pledged. *Black* v. *Zacharie*, 3 How. 483, 513. In addition to notice of the sale and of the agreement, and the assent of the bank to hold for the purchaser, there was a lodging with the bank of the written evidence of the sale. From the stock record, a party interested would learn that the bank held the stock only " as collateral security." He is thus necessarily compelled to apply to the bank in order to ascertain whether there was any substantial interest in the pledgor, and so is put upon an inquiry which, if followed up, inevitably informs him of the sale.

If the transaction was not fraudulent as to creditors, as it certainly was not, since all was done that could be required to be done as evidence of good faith, the sale was perfect and complete against all the world. *Boston Music Hall Ass'n* v. *Cory*, 129 Mass. 435; *Dickinson* v. *Bank*, 129 Mass. 279, 282; *Smith* v. *Company*, 30 La. An. 1378; *Bank* v. *Richards*, 6 Mo. App. 454; *Comeau* v. *Oil Co.*, 3 Daly 218; *Beckwith* v. *Burrough*, 14 R. I. 366; *Strange* v. *Railroad*, 53 Tex. 162, 164.

*W. W. Bailey* and *F. A. Brooks* (of Massachusetts), for the defendants.

CARPENTER, J. A transfer of stock in a dividend paying corporation, not recorded by the proper officer in the record-book kept for the purpose, is ineffectual to pass the property as against attaching creditors without notice. G. L., *c.* 148, *ss.* 10–12; *c.* 158, *s.* 6; *Pinkerton* v. *Railroad*, 42 N. H. 424; *Scripture* v. *Soapstone Co.*, 50 N. H. 571, 585–589; *Fisher* v. *Essex Bank*, 5 Gray 373; *Blanchard* v. *Gas Light Co.*, 12 Gray 213; *Shipman* v. *Ins. Co.*, 29 Conn. 245, 253; *Johnston* v. *Laflin*, 103 U. S. 804. If the defendants had no notice of the assignment to the plaintiff, they acquired by the attachment a valid lien.

Whether the agreement between Wood and the plaintiff made in May was valid under the statute of frauds (*Whittemore* v. *Gibbs*, 24 N. H. 484, Bro. St. Fr., *ss.* 296–298), and whether Wood's knowledge of it could be imputed to the defendant (*Bank* v. *Neass*, 5 Denio 330, 337, *Platt* v. *Birmingham Co.*, 41 Conn. 255, 264–266), are questions which need not be considered. The validity of the agreement and the defendants' knowledge of it may be assumed.

The contract was not executed, but executory. It was not a sale, but an agreement of Wood to sell, and of the plaintiff to buy.

If equity would enforce its specific performance against Wood and all claiming under him with notice, it would only do so upon a payment of the purchase-money. The legal title, together with a right to receive the stipulated price, remained in Wood. A purchase, or an attachment of the stock, subject to the contract, would not injure, the plaintiff. No steps were taken to transfer the legal title to the plaintiff, and nothing was paid until June 19. A creditor attaching the stock at any time before that day, with a full knowledge of all the facts, would have held Wood's right to the agreed price. Whether the defendants can levy upon and sell anything more than the legal title, subject as well to a right in the plaintiff to receive a transfer upon payment of the price, as to the pledge to the bank, is a question not raised by the case.

The agreement was executed, the price paid, and the legal title as between the parties transferred to the plaintiff, June 19. If before the attachment the defendants had notice of this transaction, the plaintiff must prevail; otherwise, the defendants.

Inasmuch as Wood was not the defendants' acting treasurer, or otherwise in their employ, after June 6, the defendants are not chargeable with his knowledge of the transaction of June 19. They had, prior to the attachment, no notice of the transfer of the title to the plaintiff, unless they are to be charged with the knowledge of their director Graves. It does not appear that Graves had any authority except as one of seven directors, who, as such, can act in behalf of the corporation only as a board. Their power is not joint and several, but joint only. G. L., *c.* 148, *s.* 3; *Despatch Line of Packets* v. *Bellamy*, 12 N. H. 205; *Edgerly* v. *Emerson*, 23 N. H. 555, 566–569; *Bank* v. *Norton*, 1 Hill 572; *Bank* v. *Canal Co.*, 4 Paige 127; *D'Arcy* v. *Railway Co.*, L. R. 2 Ex. 158. They may appoint officers and agents, with such powers as they may find convenient or necessary. G. L., *c.* 148, *s.* 3. They may confer on one of their associates a special or general authority, or, without their action, the corporation may make one of their directors a special or general agent by their course of dealing, and by holding him out to the world as such. In the absence of such authority, a director cannot by his individual action bind or affect the rights of the corporation. Notice to him is not in law notice to the corporation. *Bank* v. *Lewis*, 22 Pick. 24, 31; *Bank* v. *Cunningham*, 24 Pick. 270, 276; *Bank* v. *Savery*, 82 N. Y. 291; *Railroad* v. *Chatham*, 42 Conn. 465, 480. They are not affected by his knowledge unless they move in the business to which the knowledge is material through the agency of such director acting either alone or as one of the board. *Bank* v. *Cushman*, 121 Mass. 490; *Bank of U. S.* v. *Davis*, 2 Hill 451, 463; *Bank* v. *Cornen*, 37 N. Y. 320; *Holden* v. *Bank*, 72 N. Y. 286, 294; *Bank* v. *Payne*, 25 Conn. 444; *Foundry* v. *Dart*, 26 Conn. 376.

It does not appear that Graves took any part in causing the attachment to be made, or that he had knowledge of it, or of Wood's indebtedness to the defendants.

*Bill dismissed.*

STANLEY, J., did not sit: the others concurred.